Eugene Harry WARD, Plaintiff-Appel-
lant-Cross Appellee,

v.

Harold C. KELLY, Superintendent of
Education, et al., etc., Defendants-
Appellees-Cross Appellants.

No. 74–2240.

United States Court of Appeals,
Fifth Circuit.

July 11, 1975.

Nausead Stewart, Melvyn R. Leventhal, Fred L. Banks, Jr., Jackson, Miss., for plaintiff-appellant-cross appellee.

T. H. Campbell, III, John C. Satterfield, Yazoo City, Miss., for defendants-appellees-cross appellants.

Before GIBSON,* THORNBERRY and AINSWORTH, Circuit Judges.

THORNBERRY, Circuit Judge:

Harry Eugene Ward taught seventh and eighth grade science classes at the J. H. Webber Junior High School from 1965 to 1968. In 1968 he began to serve as the school's principal, though still retaining some classroom responsibility.[1] The J. H. Webber Junior High School was all black at the time Mr. Ward began teaching there. In 1969 this court ordered the Yazoo City Municipal Separate School District to establish a unitary school system. See United States v. Hinds Cty. Bd. of Educ., 423 F.2d 1264 (5th Cir. 1969), cert. denied, 396 U.S. 1032, 90 S.Ct. 612, 24 L.Ed.2d 531 (1970). To comply with that order, the school district paired the Webber school with N.D. Taylor High School to form the Yazoo City Junior High School—a school containing all the district's seventh, eighth, and ninth grade students. Ward took the position of Assistant Principal at the new school.[2]

The integration order, which went into effect for the second semester of the 1969–70 school year, caused a significant reduction in Yazoo City public school enrollment.[3] To adjust to the diminished enrollment, the school district reduced the number of teaching centers from eight to six, and notified nine faculty members that their contracts would not be renewed for the 1970–71 school year. Ward was one of the faculty members who received notice that his contract was not to be renewed.[4] He then sued

---

* Of the Eighth Circuit, sitting by designation.

1. Actually the evidence as to the exact nature of Ward's duties is somewhat confusing. His teaching contracts for the 1968–69 and 1969–70 school years describe his position as "Teacher and Principal." Yet some testimony raised doubts about the extent of Ward's administrative responsibilities at Webber. Mr. J. L. Palmer, who also had the title of principal, had overall responsibility for the three black schools in the district, and retained control over most administrative aspects of their operation. Mr. Palmer scheduled the classes and made employment decisions at the Webber School. Also Ward's employment contract for the 1968–69 school year contained an addendum providing that "Eugene Ward will attend summer school this summer and take courses in School Administration that will qualify him to be a Principal at J. H. Webber Junior High School." Testimony of the school district officials, however, does make clear that they considered Ward primarily an administrative employee.

2. Again, the record evidence indicates that Ward's administrative duties were not very substantial. Apparently they consisted primarily of checking attendance.

3. The enrollment decreased from approximately 4100 students in May 1969 to approximately 3300 students in May 1970.

4. In a letter dated April 14, 1970, Superintendent Harold C. Kelly informed Ward that the decline in pupil attendance would necessitate a reduction in a number of positions available in Ward's field for the 1970–71 school year. The letter stated: "Evaluation of your training, experience, and the recommendation of your principal has required us not to renew your teaching contract for the school session 1970–71."

alleging that the school board had not complied with the standards set out in Singleton v. Jackson Mun. Sep. Sch. Dist., 419 F.2d 1211 (5th Cir. 1969), cert. denied, 396 U.S. 1032, 90 S.Ct. 612, 24 L.Ed.2d 530 (1970).[5] Pursuant to a district court order, the school district's board of trustees conducted a hearing, and found that the decision not to rehire ward was based on "just cause." The district court entered judgment for the school district, adopting the findings of fact and conclusions of the board. A panel of this court reversed, finding reliance on those proceedings an improper substitute for an evidentiary hearing in the district court. Ward v. Kelly, 476 F.2d 963 (5th Cir. 1973). On remand the district judge conducted a full evidentiary hearing. He denied Ward's request for reinstatement, but awarded him $400 damages for the school district's failure to renew his contract for the 1970–71 school year.

The district court found that Ward held a temporary position at J. H. Webber Junior High School, and that he was not qualified to be rehired as a principal because he lacked the proper Mississippi state certification. The court further found that Ward's teaching position disappeared because of the pairing order. The court held that the school board had not established any objective criteria for deciding which faculty members to dismiss or demote in implementing the desegregation order. However, the judge found that Ward was unqualified to serve either as a teacher or a principal in the Yazoo City School District.[6] Despite the finding that Ward was not qualified to serve as a principal or a teacher, the district court ruled that the school board

should have offered Ward a new contract, but only for 1970–71. Therefore, the court denied reinstatement but awarded $400 actual damages for loss of income in that year.

After carefully considering the trial transcript, the appellate briefs, and the contentions of the parties at oral argument, we find that the district court did not afford Ward all the relief to which *Singleton* entitles him. Therefore we vacate the judgment below and remand the case for further proceedings.

In *Singleton* this court en banc established procedures to govern staff reductions upon integration of a school district:

> If there is to be a reduction in the number of principals, teachers, teacher-aides, or other professional staff employed by the school district which will result in a dismissal or demotion of any such staff member, the staff member to be dismissed or demoted must be selected on the basis of objective and reasonable nondiscriminatory standards from among all the staff of the school district. In addition if there is any such dismissal or demotion, no staff vacancy may be filled through recruitment of a person of a race, color, or national origin different from that of the individual dismissed or demoted, until each displaced staff member who is qualified has had an opportunity to fill the vacancy and has failed to accept an offer to do so.

419 F.2d at 1218. The record clearly shows that the school district failed to comply with the *Singleton* standards in Ward's case.

---

5. In his original complaint, Ward also claims he was discharged in retaliation for exercise of First Amendment rights. He produced no evidence to substantiate that claim at trial, and the district court properly denied relief on that basis. Originally the suit was filed as a class action. The district court denied class action status and this court previously affirmed. Ward v. Kelly, 476 F.2d 963 (5th Cir. 1973).

6. The basis for this conclusion is unclear. The district court apparently thought state certifi-

cation requirements would prohibit the school district from employing Ward either as a principal or as a teacher. But both parties here agree that Ward possesses the necessary certification for a science teaching position in grades one through eight. Additionally, appellees' counsel at oral argument indicated that the school district *could* employ Ward as a principal. Since he does not have a master's degree in administration, however, the school district would lose its AA rating.

■ The school district evaluated Ward against the other principals in the district. Based on the results of those comparative evaluations, and the recommendation of Ward's superior, D. G. Kealhofer, principal of Yazoo City Junior High School, the Superintendent of Schools decided not to renew Ward's contract for 1970–71. Even assuming the standards used to evaluate Ward as a principal were sufficiently objective,[7] the school board still had an obligation to offer Ward any position for which he was qualified before filling the vacancy with a person of a different race, color, or national origin. Adams v. Rankin Cty. Bd. of Educ., 485 F.2d 324, 326–27 (5th Cir. 1973); Singleton v. Jackson Mun. Sep. Sch. Dist., 419 F.2d 1211, 1218 (5th Cir. 1969), cert. denied, 396 U.S. 1032, 90 S.Ct. 612, 24 L.Ed.2d 530 (1970); United States v. Jefferson Cty. Bd. of Educ., 380 F.2d 385, 394 (5th Cir. 1967). This the school district failed to do.

■ When this district refused to renew his contract, Ward held an A–Elementary Teaching Certificate permitting him to teach in grades one through eight. He had been teaching science in

---

7.  School district officials based their decision in Mr. Ward's case on several factors: (1) a certification and experience chart comparing Ward to other secondary principals; (2) routine evaluation forms prepared by D. G. Kealhofer, Yazoo City Junior High School Principal, and Dr. Linfield Miller, Supervisor of Curriculum and Instruction; and (3) Superintendent Harold C. Kelly's personal opinion of Ward's performance.

The certification and experience comparison showed Ward had less experience and did not hold a certification rating equal to the other secondary school administrators:

ADMINISTRATION (SECONDARY)
(Grades 7–12)

| TEACHER'S NAME | RACE | 1 TRAINING & QUALIFICATION | | 2 YEARS EXPERIENCE | |
| --- | --- | --- | --- | --- | --- |
| | | Type of Certificate | Endorsement Area | Total Years Experience | Total District Experience |
| Eugene Ward | B | Ae | Elementary | 5 | 5 |
| D. G. Kealhofer | W | AA | Administration & Supervision | 17 | 15 |
| George Young | B | AA | Mathematics & Secondary Principal | 23 | 15 |
| Billy D. Burks | W | AA | Administration & Supervision | 20 | 2 |

The above comparison utilizes the type of objective criteria this court has previously approved in *Singleton* cases. *See* Adams v. Rankin Cty. Bd. of Educ., 485 F.2d 324 (5th Cir. 1973); Lee v. Macon Cty. Bd. of Educ., 453 F.2d 1104 (5th Cir. 1971). But the decision not to re-employ Ward was based on other subjective considerations as well. The evaluation forms that Mr. Kealhofer and Dr. Miller completed contained such questions as "Is the candidate attractive?" and "Is she industrious and energetic?" Also Superintendent Kelly based his refusal to recommend reemployment in part on his inability to locate Ward on two or three occasions when he visited the Webber building. These vague and subjective considerations are not sufficiently objective to satisfy *Singleton* requirements.

Nor can they constitute "just cause" under *Singleton*. " '[J]ust cause' in a *Singleton* situation does not refer to a teacher's lack of professional credentials, his poor performance in the classroom, his failure to abide by school regulations, his lack of cooperation, or other similar explanations . . . 'just cause' in a *Singleton* situation means types of conduct that are repulsive to the minimum standards of decency—such as honesty and integrity—required by virtually all employers of their employees, and especially required of public servants such as school teachers." Thompson v. Madison Cty. Bd. of Educ., 476 F.2d 676 (5th Cir. 1973). School district officials have never claimed that Ward has engaged in any conduct that, under this test, would constitute "just cause" for their refusal to re-employ him.

the school system since 1965. Yet the school district hired Eileen McAllister, a white with no prior teaching experience as a sixth grade science teacher for the 1970–71 school year. That action clearly violated *Singleton*'s requirement that the district give Ward the right of first refusal for a position for which he is qualified.[8] Thus *Singleton* entitles Ward to reinstatement as an elementary science teacher with compensation for lost income. We therefore remand the case to the district court for computation of the proper amount of back pay. In computing the proper award, the district court should consider salary increases that Ward would have received, and any other benefits lost as a result of the *Singleton* violation, while giving credit for Ward's earnings at other jobs during the relevant time period. *See* Lee v. Macon Cty. Bd. of Educ., 453 F.2d 1104 (5th Cir. 1971).

■ The district court also awarded plaintiff's attorneys $2,500 in attorney's fees. Ward contends here that the district court abused its discretion in making the original attorney's fee award. There are statements in the district court's order regarding the fee award that tend to substantiate Ward's claim. Since the attorneys are entitled to additional compensation for services rendered in connection with this appeal,[9] we direct the trial court to make the appropriate award for those services, and to reconsider the initial award.

■ Section 718 of the Emergency School Aid Act of 1972, 20 U.S.C. § 1617, empowers federal district courts to award reasonable attorney's fees as part of the costs of desegregation litigation.[10] The court should make a reasonable award to a successful plaintiff "unless special circumstances would render such an award unjust." Northcross v. Board of Educ. of Memphis City Schools, 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973); Henry v. Clarksdale Mun. Sep. Sch. Dist., 480 F.2d 583 (5th Cir. 1973). The statute applies to *Singleton* teacher reinstatement cases. Thompson v. Madison Cty. Bd. of Educ., 496 F.2d 682 (5th Cir. 1974). On remand the trial court should reconsider the attorney's award, applying the principles enunciated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th·Cir. 1974).[11]

Vacated ´and remanded.

8. Ward's complaint originally sought reinstatement as a principal. At oral argument, however, Ward's counsel made it clear that he now seeks reinstatement as a science teacher. Since we find Ward clearly entitled to that relief we do not consider whether the school district officials properly refused to re-employ Ward as a principal.

9. Johnson v. Combs, 471 F.2d 84 (5th Cir. 1972), cert. denied, 413 U.S. 922, 93 S.Ct. 3063, 37 L.Ed.2d 1044 (1973).

10. Though Congress passed the statute in 1972, it applies retroactively. Bradley v. School Bd. of City of Richmond, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

11. In the order on attorney's fees, the district court stated that the plaintiff in a civil rights case is entitled to one competent and qualified attorney and no more. The court may have misinterpreted our statement in *Johnson* that "If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scruti- nized. The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted." 488 F.2d at 717. That statement does not limit the plaintiff to one attorney. Rather, it requires the district judge to be sure that the award reflects each attorney's distinct contributions to the case.

Other statements indicate that the district judge may have limited the award because plaintiff's attorneys received some compensation from third parties. In this circuit that is not a permissible basis for reducing an award. Thompson v. Madison Cty. Bd. of Educ., 496 F.2d 682 (5th Cir. 1974); Fairley v. Patterson, 493 F.2d 598 (5th Cir. 1974).

The court, following our decision in Johnson v. Combs, 471 F.2d 84 (5th Cir. 1972), cert. denied, 413 U.S. 922, 93 S.Ct. 3063, 37 L.Ed.2d 1044 (1973), also denied attorney's fees for services rendered prior to July 1, 1972, the effective date of § 718 of the Education Amendments Act of 1972, 20 U.S.C. § 1617. *Bradley* makes that action improper. *See* note 10, *supra*.