Martha JOHNSON and Delores J. Cebal-
los, etc., Plaintiffs-Appellants,

v.

UNIVERSITY COLLEGE OF the UNI-
VERSITY OF ALABAMA IN BIR-
MINGHAM; George W. Campbell, etc.
et al., Defendants-Appellees.

No. 81–7860.

United States Court of Appeals,
Eleventh Circuit.

June 10, 1983.

Susan W. Reeves, Edward Still, Birmingham, Ala., Blacksher, Menefee & Stein, James U. Blacksher, Larry T. Menefee, Mobile, Ala., for plaintiffs-appellants.

Bradley, Arant, Rose & White, James P. Alexander, Linda Friedman, Ms. Ian Leonard, Univ. of Ala. in B'ham, Birmingham, Ala., for defendants-appellees.

Before RONEY and CLARK, Circuit Judges, and TUTTLE, Senior Judge.

RONEY, Circuit Judge:

This is another in a series of civil rights actions in which the appeal concerns solely the award of attorney's fees under Title VII, 42 U.S.C.A. § 2000e–5(k), and the Civil Rights Attorneys Fees Awards Act of 1976, 42 U.S.C.A. § 1988, not the merits of the lawsuit. Two weeks prior to the scheduled trial in this employment discrimination class action, the named parties filed a proposed consent decree which the district court accepted. The consent decree acknowledged defendants' obligation to pay plaintiffs' fees, and pledged that the parties would try to negotiate the proper amount. When these efforts proved futile, plaintiffs, in accord with the decree, filed a motion for fees with the court. Discovery, motions to compel and quash, a two-day hearing, and a fight over the terms of an offer of judgment ensued. Finally, nearly one year after the consent decree was filed, the district court awarded interim fees of $50,000. A year later in its final disposition of the fee issue, it awarded an additional $8,183.67, bringing the total award to $58,183.67, an amount which reflected reductions in the hourly rate, hours worked, and litigation expenses that plaintiffs' counsel claimed. Pursuant to Fed.R.Civ.P. 68, the district

court assessed costs against plaintiffs because the fee award was less than the amount defendants offered prior to the fee hearing.

Plaintiffs have appealed both the amount of the attorney's fees award and the assessment of costs. We reverse and remand for reconsideration of both. The ensuing discussion considers seriatim the numerous issues raised by this appeal.

I. *Denial of Fees for Time Spent Litigating Fees*

 In completely denying plaintiffs' fees for time spent litigating the fee question after the consent decree, the district court followed two rationales. First, the court construed the consent decree, which provided that "[i]n determining attorney's fees the court will be guided by principles outlined by the Fifth Circuit [in] *Johnson v. Georgia Highway Express, [Inc.]*, 488 F.2d 714 ( [5th Cir.] 1974)," as precluding fees for time litigating fees because *Johnson* did not contemplate the award of such fees. This is simply a misreading of *Johnson*. That case concerned the factors a court should consider in determining the proper amount of an award. It did not concern the stages of litigation for which any attorney's fees may be awarded. Thus the consent decree's reference to *Johnson,* we believe, had nothing to do with the propriety of awarding fees for litigating over fees. Such an award is authorized by the case law, *Johnson v. Mississippi,* 606 F.2d 635, 637–39 (5th Cir.1979), and plaintiffs did not waive this right.

The second ground given by the district court for denying any award of fees for time spent litigating the fees question, in essence that plaintiffs were completely to blame for the additional litigation, is not supported by the record or the law. Defendants did not make an offer of judgment until nearly eight months after the consent decree became final. Plaintiffs were entitled to a hearing to resolve any disputed issue of fact. *King v. McCord,* 621 F.2d 205, 206 (5th Cir.1980). Assuming their claim was in good faith, which cannot be denied on this record, they cannot be penalized for exercising that right.

II. *Reduction by One-Third of "Reconstructed" Time*

Pursuant to interrogatories and the district court's request for substantiation of time incurred, plaintiffs' counsel submitted contemporaneous billing records for the vast majority of hours worked. Attorney Reeves, however, did not have contemporaneous records for the 100 hours she claimed to have worked. According to her testimony at the hearing, she reached the 100-hour figure based on diary entries and work product found in her files. The district court cut the hours by one-third for failure to maintain contemporaneous records.

 The district court did not have to accept Reeves' claim of 100 hours as true, just as it would not have had to do so if the assertion had been supported by contemporaneous billing records. However, while the burden to substantiate a fee is on plaintiff's counsel, *see Carr v. Blazer Financial Services, Inc.,* 598 F.2d 1368, 1371 (5th Cir. 1979), Reeves' testimony and secondary documentation supports her claim. The lack of contemporaneous records does not justify an automatic reduction in the hours claimed. *See Harkless v. Sweeny Independent School District,* 608 F.2d 594, 597 (5th Cir.1979) (affirming award despite absence of time records).

III. *Deletion of Time Spent by Out-of-Town Counsel Due to "Unnecessary Duplication"*

 The district court excluded some of the work time spent by defense counsel based on a finding "of unnecessary duplication of effort and time due to the association of the two attorneys from Mobile." The court also deleted all of the time incurred by the two attorneys traveling to Birmingham, the site of the trial litigation. The present limited finding and the existing record does not sustain this reduction. The district court has failed to specify any instances of duplicative effort, so it cannot be determined whether any reduction for duplication is warranted. *See Tasby v.*

*Estes,* 651 F.2d 287, 289–90 (5th Cir.1981) (quoting *Northcross v. Board of Education,* 611 F.2d 624, 637 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980)).

■ The retaining of multiple attorneys in a significant, lengthy employment discrimination case such as this one is understandable and not a ground for reducing the hours claimed. The use in involved litigation of a team of attorneys who divide up the work is common today for both plaintiff and defense work. While *Johnson* recognizes the possibility of unnecessary duplication for which double compensation should not be granted, 488 F.2d at 717, a reduction is warranted only if the attorneys are *unreasonably* doing the *same* work. An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation. *Ward v. Kelly,* 515 F.2d 908, 912 n. 11 (5th Cir.1975). *See also Dowdell v. City of Apopka, Florida,* 698 F.2d 1181, 1188 (11th Cir.1983).

■ Since plaintiffs had the right to retain more than one attorney, the exclusion of out-of-town counsel's travel time is proper only if it was unreasonable not to hire qualified local counsel. *Cf. Dowdell,* 698 F.2d at 1192 (travel expenses may be recoverable); *McPherson v. School District # 186,* 465 F.Supp. 749, 758 (S.D.Ill.1978) (compensating out-of-town counsel for travel time to litigation site but at lower rate). We note that "civil rights litigants may not be charged with selecting the nearest and cheapest attorney." *Dowdell,* 698 F.2d at 1192.

IV. *Exclusion of Evidence (Restriction on Discovery) of Defendants' Fees and Expenses in this Case*

Pursuant to a defense motion, the district court quashed a subpoena sought by plaintiffs requiring the defendants to produce all records showing the hours expended by counsel, expenses incurred, and fees paid. The court reasoned, among other things, that this defense information was irrelevant to the reasonable fees and hours of plaintiffs' counsel. The court reaffirmed its position at the evidentiary hearing, sustaining a defense objection to questions concerning the fees charged in this case by defense counsel. The court also refused to admit into evidence, except in regard to expenses, the billing statements of defense counsel in this case, which plaintiffs had obtained in related state litigation. Without objection, however, plaintiffs did inquire about the hourly rate billed by a lead defense counsel, John J. Coleman, Jr.

■ Without suggesting that it would have been error to admit such evidence, we cannot hold that the district court abused its discretion in quashing the subpoena or in sustaining the objection at the hearing in this case. This Court has questioned the relevance of the number of hours spent by defense counsel to a determination of the reasonable fee for plaintiffs' attorneys. *Harkless v. Sweeny Independent School District,* 608 F.2d at 598. The amount of hours that is needed by one side to prepare adequately may differ substantially from that for opposing counsel, since the nature of the work may vary dramatically. The case may have far greater precedential value to one side than the other. *Mirabal v. General Motors Acceptance Corp.,* 576 F.2d 729, 731 (7th Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 699 (1978). With respect to the hourly rate, one side may employ far more experienced counsel. Of course, a district court might properly determine in a given case that these concerns merely go to the weight of the evidence, not to its admissibility or discoverability. *See, e.g., Stastny v. Southern Bell Telephone & Telegraph Co.,* 458 F.Supp. 314, 318 (W.D.N.C.1978) (deeming fees and expenses of defense counsel relevant to determining reasonable award for plaintiffs' counsel), *rev'd in part on other grounds,* 628 F.2d 267 (4th Cir.1980). But we cannot conclude that the district court abused its discretion here.

Plaintiffs had many avenues to obtain evidence to support their fee petition. Plaintiffs submitted numerous affidavits

from other local attorneys concerning their customary fee for litigation-related work. Other affidavits from attorneys discussed the reasonableness of the fee request. In addition, the court allowed plaintiffs to submit much information concerning defense fees. The court advised plaintiffs at the hearing that they could inquire about defense counsel's customary fee, just not their fee in this particular case, and plaintiffs were able to question one defense attorney about the hourly rate he charged in this case.

## V. Striking of Plaintiffs' "Acceptance" of Defendants' Offer of Judgment

In July 1980, eight months after the consent decree became effective and more than a month before the fee hearing, the defendants submitted pursuant to Fed.R.Civ.P. 68 a formal offer "to allow judgment to be taken against [them] in this action in the amount of $75,000 for attorney's fees, expenses and costs." Plaintiffs purported to accept the offer, but stated that the acceptance only settled the fees and expenses for work done prior to January 15, 1980, the day they filed their outstanding motion for fees and expenses incurred through January 14. In other words, plaintiffs' acceptance did not cover their claim for fees incurred while litigating the fees issue or any fees incurred in the future to enforce the consent decree. Defendants immediately filed a motion to strike the "acceptance," which the district court granted, directing the clerk not to accept a judgment "inconsistent" with the offer. Plaintiffs did not file a second, broader acceptance, and the offer expired pursuant to Rule 68.

■ This issue turns on defendants' intent in making the offer. Under elementary principles of contract law, an offeree cannot accept a different offer from that made by the offeror. There must be a meeting of the minds. *See .Cruz v. Pacific American Insurance Co.,* 337 F.2d 746, 749 (9th Cir.1964); *Greenwood v. Stevenson,* 88 F.R.D. 225, 230 (D.R.I.1980).

■ On appeal, plaintiffs assert error in the striking of their acceptance of the offer.

The district court's determination that the acceptance and offer were inconsistent is not clearly erroneous. The offer nowhere indicated that it encompassed only costs and fees incurred prior to the January 15 motion. To the contrary, the language seems all encompassing.

## VI. Exclusion of Computer Expenses

■ The district court completely denied nearly $3,000 worth of "computer services" allegedly incurred by plaintiffs, reasoning that plaintiffs failed to explain the nature of the services as required by a court order directing plaintiffs to substantiate all claimed expenses with "invoices, evidence of payment, and reason for the expense." In response to the order, plaintiffs submitted ledger sheets which reflected various costs, including computer expenses, and furnished defendants with invoices. While they never provided any explanation for the costs, one of their attorneys at the hearing voiced her willingness to explain the computer costs then. Inexplicably, neither defense counsel, who was questioning plaintiffs' attorney at the time, nor the court requested that she do so.

Given that plaintiffs furnished invoices and ledgers, and agreed to explain the expenses, they obeyed the court order in substantial part. While the ledger entries may not have supported all of the claimed expenses, as defendants assert, this does not justify the court's complete denial of expenses. The district court rendered its decision 13 months after the hearing, and we conclude that the court overlooked the plaintiffs' compliance with the court order. On remand, the court should reconsider whether any or all computer costs are recoverable in this case. The test, as always, is one of reasonableness. "[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of. the case may be taxed as costs . . . ." *Dowdell,* 698 F.2d at 1192.

VII. *Hourly Rate*

The district court set an identical hourly rate for each of plaintiffs' attorneys, with the rate increasing each year of the litigation to reflect greater experience and increases in customary fees. The rates determined by the court were as follows:

| 1974 | $35.00 |
|------|--------|
| 1975 | $40.00 |
| 1976 | $45.00 |
| 1977 | $55.00 |
| 1978 | $58.00 |
| 1979 | $60.00 |
| 1980 | $65.00 |

These figures, while less than those requested by plaintiffs, were in accord with substantial evidence as to customary fees of equally experienced local counsel. Without going into unnecessary detail, a few examples of the supporting evidence are helpful. A former President of the Birmingham Bar Association with experience in Title VII litigation, James Barton, testified that during the seven year period of this litigation a "very experienced and well-qualified attorney" could charge between $50 and $80 per hour, with a less experienced attorney of 10 years or less in practice charging $35 to $50 an hour. All of plaintiffs' counsel were in their first ten years of practice for most if not all of the litigation. Mr. Barton termed plaintiffs' request "far outside the range of fees generally charged" in Title VII work. A survey by the Alabama Bar Association showed the average billing rate in 1978 in Jefferson County, which includes Birmingham, to be $57.68. The majority of those surveyed had been admitted as long as plaintiffs' most senior attorney. While plaintiffs introduced some evidence supporting their petition, the rates set by the court were not clearly erroneous.

As it should have, the court considered all of the *Johnson* factors, indicating how, if at all, each influenced the fee award. *Fitzpatrick v. IRS*, 665 F.2d 327, 332–33 (11th Cir.1982); *Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575, 582–84 (5th Cir. 1980). On appeal, plaintiffs complain in particular about the court's application of two of the factors: undesirability and contingency.

The district court determined this significant civil rights litigation could not be deemed undesirable to attorneys whose practice in large measure consists of plaintiffs' civil rights work. *Norwood v. Harrison*, 410 F.Supp. 133, 142 (N.D.Miss.1976), aff'd, 581 F.2d 518 (5th Cir.1978). Indeed, the success of counsel in this case may very well generate other representations in similar cases. The district court cannot be reversed because of its handling of this *Johnson* factor.

The district court enhanced the fee by 10 percent based on its contingent nature. Since no compensation is guaranteed in a contingency case, an enhancement for successful counsel may be appropriate. *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir.1981) (en banc). District courts, however, do not have to adjust every fee upward because of a contingent fee. *Marion v. Barrior*, 694 F.2d 229, 231–32 (11th Cir. 1982). The decision that enhancement is appropriate in this case appears sound. But as to the amount of enhancement the district court apparently based the 10 percent figure on its perception that plaintiffs' counsel was receiving payments from the Lawyer's Committee for Civil Rights for this representation. This Court has held that an award of attorney's fees should not be reduced simply because counsel is receiving some compensation from third parties. *Ward v. Kelly*, 515 F.2d at 912 n. 11; *Thompson v. Madison County Board of Education*, 496 F.2d 682, 689 (5th Cir.1974); see *Fairley v. Patterson*, 493 F.2d 598, 606–07 (5th Cir.1974).

VIII. *Failure to Consider Delay in Payment*

The district court awarded the plaintiffs historical rates, reflecting the reasonable fee at the time the work was performed, apparently without any enhancement for delay in payment. Such delay obviously dilutes the eventual award and may convert an otherwise reasonable fee into an unreasonably low one. As a result, district courts should take into account in-

flation and interest, perhaps by adjusting the contingency factor to reflect delay, not just contingency, or perhaps by compensating at current, not historical, rates. *See Copeland v. Marshall,* 641 F.2d 880, 893 (D.C.Cir.1980) (en banc); *Northcross v. Board of Education,* 611 F.2d 624, 640 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980). We do not prescribe any set method for correcting for delay in payment, but some form of correction must be undertaken. The district court should do so on remand. If this requires a reevaluation of the historical hourly rates, the district court is free to approach the delay problem in that manner. *See Morgado v. Birmingham-Jefferson County Civil Defense Corps,* 706 F.2d 1184 (11th Cir.1983).

IX. *Conclusion*

This nation has sought to protect citizens' most basic, cherished rights and liberties by enacting a plethora of civil rights laws. Congress recognized in the Fees Act and in Title VII, however, that effective enforcement of those laws depends to a large extent upon the action of private citizens, not just government officials. *See* H.Rep. No. 238, 92nd Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 2137, 2147–48. It also perceived that most victims of civil rights violations lacked the resources to obtain the legal counsel necessary to vindicate their rights through the judicial process. H.R.Rep. No. 1558, 94th Cong., 2d Sess. (1976). Adequate fee awards are essential to the full enforcement of the civil rights statutes and are an integral part of the remedies necessary to secure compliance with those laws. S.Rep. No. 1011, 94th Cong., 2d Sess. 3, *reprinted in* 1976 U.S. Code Cong. & Ad.News 5908, 5911. The standards and principles underlying the Fees Act and the fee provisions of Title VII are the same. *See id.* at 4, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 5912; *Salone v. United States,* 645 F.2d 875, 879 (10th Cir.1981).

Congress further recognized that effective enforcement of civil rights laws depends on fee awards sufficient to attract competent counsel without producing a windfall to the attorneys. To this end, it explicitly expressed its intent that the "amount of fees awarded [under the Fees Act] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases ...", and that fee computations result in payments, "as is traditional with attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.'" S.Rep. No. 1011, 94th Cong., 2d Sess. 6, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 5913 (quoting *Davis v. County of Los Angeles,* 8 Empl.Prac.Dec. (CCH) ¶ 9444 (C.D.Cal.1974) and *Stanford Daily v. Zurcher,* 64 F.R.D. 680, 684 (N.D.Cal.1974)). This Court has recognized that "the standard of reasonableness is to be given a liberal interpretation." *Dowdell,* 698 F.2d at 1192.

The procedures for applying the *Johnson* standards, which were cited with approval in the legislative history to the Fees Act, S.Rep. No. 1011, 94th Cong., 2d Sess. 6, *reprinted in* 1976 U.S.Code Cong. & Ad. News at 5913, have been set out in numerous cases such as *Fitzpatrick v. IRS,* 665 F.2d at 332–33, and *Copper Liquor, Inc. v. Adolph Coors Co.,* 624 F.2d at 583 & n. 15. As most attorney's fees cases demonstrate, application of these principles should result in a reasonable fee which meets the goals of the statutes. In the last analysis, however, the fulfillment of the congressional purpose depends upon the ultimate judgment of the district court, not just the mechanical application of established principles. This case entailed eight years of litigation resulting in the successful vindication of important rights. The voluminous record reveals that plaintiffs' attorneys confronted complicated factual and legal issues as well as a group of defendants who staunchly resisted their efforts at almost every turn. Despite these obstacles, they attained a significant victory and established a mechanism for ensuring that defendants' future employment actions comport with the civil rights laws. The fees awarded to plaintiffs' attorneys should

reflect the congressional purpose in enacting the Fees Act and Title VII.

REVERSED AND REMANDED.