[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10679

_____

D.C. Docket No. 1:17-cv-21765-RNS


ROBERTO VASCONCELO,

Plaintiff-Appellant,

versus

MIAMI AUTO MAX, INC.,
KENNYA QUESADA,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(November 25, 2020)

Before WILLIAM PRYOR, Chief Judge, HULL and MARCUS, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

Roberto Vasconcelo sued his employer, Miami Auto Max, for violating the

Fair Labor Standards Act and sought over $12,000 in unpaid wages and liquidated

damages. He refused an offer of judgment for $3,500 and went to trial, where he

won a verdict of only $97.20 plus an equal amount in liquidated damages. As the prevailing party, he then requested about $60,000 in attorney's fees and costs. But the district court awarded him only 37 percent of his requested attorney's fees and taxed against him the costs incurred by the parties after the offer of judgment. Vasconcelo appeals both the final judgment and the order awarding fees and taxing costs. But his appeal of the final judgment is untimely, and his appeal of the order awarding attorney's fees and taxing costs has no merit. We dismiss in part and affirm in part.

## I. BACKGROUND

Vasconcelo worked as a sales associate for Miami Auto Max from November 2016 until July 2017. Miami Auto Max paid its sales associates a "draw against commission"; associates earned commissions on the cars they sold and were paid a weekly draw against their commissions of an amount equal to the minimum wage multiplied by their number of hours worked. To the extent a sales associate's draw exceeded his earned commissions, the difference was carried forward in perpetuity and applied against future commissions. Vasconcelo struggled to sell enough cars to offset the draws against his commissions, and his total draws exceeded his commissions by $2,739.21 after his last month on the job.

On May 12, 2017, Vasconcelo sued Miami Auto Max and its owner, Kennya Quesada, to recover damages for unpaid wages under the Fair Labor Standards

2

Act. He alleged that his weekly draws were not wages at all, but a debt owed to Miami Auto Max. He also alleged that he was required to work off the clock and not paid a minimum wage for those hours, that Miami Auto Max took unwarranted deductions from his time logged, and that it did not pay him on time. Based on the theory that none of his weekly draws counted as minimum-wage payments, he estimated that he was owed $6,397.65 in unpaid wages plus an equal amount in liquidated damages under the Fair Labor Standards Act, for a total of $12,795.30.

On December 5, 2017, Miami Auto Max made Vasconcelo an offer of judgment under Federal Rule of Civil Procedure 68. It offered $3,500 "inclusive of liquidated damages, plus a reasonable amount of attorney['s] fees and costs incurred to date." The offer specified that "any resulting judgment shall [not] be construed as an admission by Defendants of any liability in this action, or that Plaintiff has suffered any damage." Vasconcelo did not accept the offer.

The case proceeded to a two-day jury trial. Vasconcelo argued that Miami Auto Max's entire "draw against commission" plan violated the Fair Labor Standards Act. He also presented testimony that his manager twice failed to adjust his time cards to reflect that he had been working since 9:00 a.m. after he forgot to punch in until around 3:00 p.m., which meant that he was not paid for 12 hours of work. The jury found that Miami Auto Max had failed to pay Vasconcelo a minimum wage for all hours worked and awarded him $97.20 in damages, exactly

3

12 hours of minimum-wage payments. The district court entered judgment in favor of Vasconcelo for $97.20.

After trial, Vasconcelo moved to amend the judgment to include an additional $97.20 in liquidated damages under the Fair Labor Standards Act and a reservation of jurisdiction for the district court to enter an award of fees and costs as required under the Act. He also moved for judgment as a matter of law on one alleged violation of the Act, and he moved alternatively for a new trial based on improper jury instructions.

The district court denied Vasconcelo's motion for judgment as a matter of law or a new trial, but it granted in part his motion to amend the judgment. It vacated the final judgment, reserved jurisdiction over the issue of attorney's fees, and agreed that the new final judgment should include an award of $97.20 in liquidated damages. The district court made clear that it was not entering a new final judgment, but that it would do so after the issue of fees and costs had been resolved.

Meanwhile, Miami Auto Max moved to tax its $1,340 in post-offer costs against Vasconcelo under Rule 68. And Vasconcelo moved to tax all $3,951.29 of his costs against Miami Auto Max, as well as for $55,990 in attorney's fees, both as provided in the Fair Labor Standards Act. The district court referred the motions for fees and costs to a magistrate judge.

4

The magistrate judge recommended taxing Miami Auto Max's post-offer costs against Vasconcelo under Rule 68. He reviewed Vasconcelo's request for attorney's fees line by line and recommended excluding roughly 40 hours of work from the lodestar calculation. And he recommended further reducing Vasconcelo's fee request by 70 percent based on his limited success at trial. The parties filed a flurry of objections and responses, and the district court announced it would enter a final judgment on the merits while the parties continued to litigate attorney's fees and costs.

On October 30, 2018, the district court entered a final judgment for $194.40 in damages. On January 22, 2019, it adopted the magistrate judge's recommendations in full. It explained that the magistrate judge's lodestar calculation was no longer correct in the light of a later-revealed scrivener's error, but it corrected the error and adopted the originally recommended $13,083 fee award as a 63 percent (instead of 70 percent) reduction to the lodestar. And it agreed that Miami Auto Max's post-offer costs should be taxed against Vasconcelo under Rule 68. On February 21, 2019, Vasconcelo appealed both the final judgment and the order awarding fees and costs.

## II. STANDARD OF REVIEW

We review for abuse of discretion an award of attorney's fees under the Fair Labor Standards Act. *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1543

5

(11th Cir. 1985). We review an interpretation of Rule 68 *de novo*, but we review

any disputed facts about an offer of judgment under that rule for clear error. *Jordan*

*v. Time, Inc.*, 111 F.3d 102, 105 (11th Cir. 1997).

## III. DISCUSSION

We divide our discussion in three parts. First, we explain that Vasconcelo's

appeal of the final judgment is untimely. Second, we address the award of

attorney's fees. And third, we address the application of Rule 68.

### A.  *We Lack Jurisdiction Over Vasconcelo's Untimely Appeal of the Final Judgment.*

The Federal Rules of Appellate Procedure require that a notice of appeal in a

civil case be filed within 30 days after the entry of judgment. Fed. R. App. P.

4(a)(1)(A). That rule has a statutory basis, *see* 28 U.S.C. § 2107(a), and it is

jurisdictional, *Bowles v. Russell*, 551 U.S. 205, 213 (2007). The district court

entered its final judgment on October 30, 2018, and Vasconcelo did not file his

notice of appeal until February 21, 2019. Because he waited more than 30 days to

appeal the final judgment, we lack jurisdiction over that portion of the appeal.

Vasconcelo argues that, under our precedents, a special rule applies in

appeals involving the Fair Labor Standards Act. He says that the judgment was not

final and appealable until the district court entered an order awarding attorney's

fees on January 22, 2019, and that his appeal is timely. But the decision on which

6

Vasconcelo relies, *Shelton v. Ervin*, 830 F.2d 182 (11th Cir. 1987), has been abrogated by a decision of the Supreme Court.

To be sure, we held in *Shelton* that "attorney['s] fees are an integral part of the merits of [Fair Labor Standards Act] cases and part of the relief sought therein." *Id.* at 184. And, we concluded, "a final determination as to the award of attorney['s] fees is required as part of the final appealable judgment." *Id.* But we based our analysis on two decisions that the Supreme Court expressly abrogated soon afterward. *See id.* at 183 (relying on *McQurter v. City of Atlanta*, 724 F.2d 881 (11th Cir. 1984), *abrogated by Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988), and *Holmes v. J. Ray McDermott & Co.*, 682 F.2d 1143 (5th Cir. 1982), *abrogated by* 486 U.S. 196).

In *Budinich v. Becton Dickinson and Company*, the Supreme Court granted a writ of certiorari to resolve a circuit split about "whether a decision on the merits is a 'final decision' as a matter of federal law under [section] 1291 when the recoverability or amount of attorney's fees for the litigation remains to be determined." 486 U.S. at 199. The Supreme Court explained that "[s]ome Courts of Appeals have held that . . . statutes creating liability for attorney's fees can cause them to be part of the merits relief for purposes of [section] 1291," and it cited *McQurter* and *Holmes* as examples. *Id.* at 201. The Supreme Court rejected that approach and adopted "a uniform rule that an unresolved issue of attorney's

7

fees for the litigation in question does not prevent judgment on the merits from being final." *Id.* at 202. So *Budinich* abrogated *Shelton*'s contrary holding that "a final determination as to the award of attorney['s] fees is required as part of the final appealable judgment." 830 F.2d at 184.

Vasconcelo argues that *Shelton* remains good law after *Budinich* because neither the Supreme Court nor this Court has ever extended *Budinich* to cases involving the Fair Labor Standards Act. In doing so, he suggests that the importance of attorney's fees under the Fair Labor Standards Act insulates *Shelton* from the holding in *Budinich*. We disagree.

*Budinich* did not turn on statutory context; the Court rejected a statute-by-statute approach in favor of "a uniform rule." 486 U.S. at 201–02. And the import of *Budinich* is apparent from the decisions it abrogated: *McQurter* involved attorney's fees in civil-rights actions, *see* 42 U.S.C. § 1988, 724 F.2d at 882, and *Holmes* involved attorney's fees under general maritime law, 682 F.2d at 1144, 1147 n.7. *Budinich* itself involved a diversity-jurisdiction suit based on a Colorado employment statute. 486 U.S. at 197.

The Supreme Court has explained that "complex variations in . . . fee-shifting provisions" make exceptions to this uniform rule unworkable. *Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emps.*, 571 U.S. 177, 188 (2014). And it has rejected the notion that

8

courts should consider whether "[s]ome fee-shifting provisions treat the fees as part of the merits . . . [and] some do not." *Id.* "The rule adopted in *Budinich* ignores these distinctions in favor of an approach that looks solely to the character of the issue that remains open after the court has otherwise ruled on the merits of the case." *Id.* Setting up *Shelton* as a one-off exception to *Budinich* would not be a faithful application of Supreme Court precedent.

Because *Budinich* abrogated *Shelton*, Vasconcelo's appeal of the final judgment is untimely. We have no choice but to dismiss that portion of his appeal. But Vasconcelo's appeal was timely as to the order awarding attorney's fees and taxing costs, so we have jurisdiction over those portions of his appeal.

### B. The District Court Did Not Abuse Its Discretion by Reducing Vasconcelo's Request for Attorney's Fees.

The district court acted within its discretion to award a reasonable fee in the light of Vasconcelo's limited success at trial, where he recovered only $194.40 after demanding $12,795.30. "The determination of a reasonable fee pursuant to section 216(b) of the Fair Labor Standards Act is left to the sound discretion of the trial judge and will not be set aside absent a clear abuse of discretion." *Kreager*, 775 F.2d at 1543. Vasconcelo's scattershot arguments that the district court abused its discretion by reducing his request for a fee award of $55,990 to an award of $13,083 all fail.

9

Vasconcelo argues that the district court erred by reducing his fee because he rejected Miami Auto Max's offer of judgment. But he cites no authority to explain why such an adjustment would be erroneous. And his assertion is inconsistent with the record. Vasconcelo contends that the magistrate judge's report and recommendation "specifically provided that a material reason for the downward adjustment [was] 'that this case was indisputably not settled at any point prior to trial,'" and he implies that the Rule 68 offer was the only settlement to which the magistrate judge could have been referring. But the magistrate judge made clear—in the very sentence of the report and recommendation quoted by Vasconcelo—that Vasconcelo not only rejected Miami Auto Max's Rule 68 offer, but also "multiple settlement efforts by counsel informally, at mediation, and at a court-supervised settlement conference." The district court did not abuse its discretion by accounting for Vasconcelo's refusal to settle the case before trial. *See Vocca v. Playboy Hotel of Chi., Inc.*, 686 F.2d 605, 608 (7th Cir. 1982) (holding that failing to accept a reasonable settlement offer and thereby prolonging litigation justified a reduced fee award).

Vasconcelo also argues that the district court erroneously double-counted some factors in its determination of a reasonable fee by applying an across-the-board reduction to the lodestar based on factors already considered in excluding hours from the lodestar. *See Bivins v. Wrap it Up, Inc.*, 548 F.3d 1348, 1352 (11th

10

Cir. 2008). Specifically, he alleges that the magistrate judge's report and recommendation "consider[ed] the supposed failure to settle when arriving at the lodestar calculation, and then ma[de] further adjustment downward based upon the failure to settle." But the record tells a different story.

The magistrate judge performed a line-by-line review of Vasconcelo's attorney's time log. Based on that review, the magistrate judge recommended excluding from the lodestar roughly 40 hours of work that included "excessive use of time preparing for settlement conferences (which were unsuccessful given [Vasconcelo's] and his counsel's inflated view of their case)." Vasconcelo emphasizes the magistrate judge's frustrated comment about his and his counsel's stubbornness—a theme that runs throughout the report and recommendation—but this aside does not change the fact that the hours were excluded because the preparation time was excessive, not because the settlement conferences were unsuccessful.

Vasconcelo argues that the district court erred by reducing his attorney's fees based on his limited success at trial. He argues that the success of lawsuits for unpaid wages cannot be judged solely based on dollars and cents and that attorney's fee awards should not be reduced based only on modest judgments. But Vasconcelo's argument again involves a misreading of the record.

11

The district court did not conclude that Vasconcelo's success at trial was limited because he recovered only a modest judgment. It instead explained that Vasconcelo's success was limited when compared to his own demand: "[I]n his underlying claim, Vasconcelo sought to recover $12,795.30 in unpaid wages and liquidated damages. In contrast, after trial, the Court entered judgment in Vasconcelo's favor for only $194.40 . . . . This represents 1.5[ percent] of the total amount sought." Vasconcelo's success was limited; he alleged that Miami Auto Max's entire payment plan was illegal but prevailed only on a minor timekeeping violation. The district court did not abuse its discretion by reducing his fee award based on limited success.

Vasconcelo argues that the district court failed to account for the public benefit of vindicating an employee's rights under the Fair Labor Standards Act. *See Villano v. City of Boynton Beach*, 254 F.3d 1302, 1306–07 (11th Cir. 2001). But the magistrate judge and the district court did consider the public interest. The magistrate judge said that "[c]ontrary to the immediate need to enforce his rights and protect the public interest, [Vasconcelo] had other factors in mind [i.e. attorney's fees] in refusing to settle the case and in pursuing the case in the manner that he did. The public interest factor in this case thus tilts heavily in favor of [Miami Auto Max's] position, not [Vasconcelo's]." And the district court acknowledged Vasconcelo's public-interest argument before agreeing with the

12

magistrate judge's analysis. The district court did not abuse its discretion by failing to account for the public interest.

Vasconcelo argues that the district court erroneously premised the reduction of the lodestar on the fact that he did not prove "abuse." But the failure to show "abuse" was not an independent reason for the lodestar reduction. In its full context, the "abuse" language that Vasconcelo finds objectionable is part of the magistrate judge's discussion of the fact that his fee request was unreasonable in the light of his limited success on a minor timekeeping violation:

> [C]ontrary to [Vasconcelo's] aggrandized view of this case, the [Fair Labor Standards Act] is not designed to merely reward attorneys billing time. The statute was enacted to prevent employees from abuse in the work place. The jury found here that no such abuse existed and that only a modest sum was required to remedy a minor minimum wage violation. The entire statutory scheme, however, is undermined when parties go to litigation war over such minor violations.

A passing comment that a violation was small potatoes compared to the ensuing litigation is not an abuse of discretion.

And finally, Vasconcelo argues that because enhancements of the lodestar should be reserved for exceptional cases, reductions of the lodestar should be rare too, but even if that argument were true, it would not mean that Vasconcelo should have been awarded the entire fee he requested. The district court did not abuse its discretion when it declined to award nearly $60,000 in fees for litigating a $200 case.

13

### C. The District Court Correctly Applied Rule 68 to Tax the Parties' Post-Offer Costs Against Vasconcelo.

Rule 68 allows defendants to "serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a). And it compels plaintiffs to give offers serious consideration by providing that "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d). The district court concluded that Miami Auto Max made a valid offer of judgment that proved to be more favorable than the damages awarded, and it applied Rule 68 to tax against Vasconcelo the costs incurred by Miami Auto Max after the offer.

Vasconcelo raises three arguments. He argues that Rule 68 cannot prevent a mandatory award of costs to a prevailing plaintiff under the Fair Labor Standards Act, that Miami Auto Max's offer of judgment was ambiguous and, as a result, invalid, and that Miami Auto Max's offer of judgment was less favorable than the jury verdict. None of these arguments has any merit.

Vasconcelo argues that Rule 68 cannot prevent prevailing plaintiffs from recovering costs under the Fair Labor Standards Act, but Rule 68 applies in actions brought under the Fair Labor Standards Act no less than in any other case. *See* Fed. R. Civ. P. 1 ("These rules govern the procedure in *all* civil actions . . . ." (emphasis added)). Vasconcelo argues that because the "[Fair Labor Standards Act's]

14

statutory design makes an award of costs mandatory to prevailing Plaintiffs to further the underlying public policy," "Rule 68 is unavailable as a means of shifting cost[s]" in cases brought under the Act. But he ignores the fact that, by statute, any conflict between Rule 68 and the Fair Labor Standards Act must be resolved the other way. The Rules Enabling Act provides that after the effective date of any rule of procedure "all laws in conflict therewith shall be of no further force or effect." Pub. L. No. 73-415, § 1, 48 Stat. 1064. Under the terms of section 2 of the Rules Enabling Act, the Federal Rules of Civil Procedure—including Rule 68—took effect on September 16, 1938, at the end of the congressional session at which they were first transmitted to Congress. 4 Charles A. Wright, Arthur R. Miller & Adam N. Steinman, *Federal Practice and Procedure* § 1004, at 28 (2015). The Fair Labor Standards Act was enacted three months earlier, on June 25, 1938. Pub. L. No. 75-718, 52 Stat. 1060. Because the Fair Labor Standards Act was enacted before the effective date of Rule 68, the Rules Enabling Act establishes that Rule 68 applies in any conflict between the two. The Fair Labor Standards Act does not create an exception to the normal application of Rule 68.

Vasconcelo argues that Miami Auto Max's offer of judgment was invalid because it was ambiguous as to whether the $3,500 settlement included fees and costs, but an ambiguous offer of judgment is not necessarily invalid—such an offer is construed against its drafter, not ignored entirely. *See Util. Automation 2000,*

15

*Inc. v. Choctawhatchee Elec. Co-op., Inc.*, 298 F.3d 1238, 1243 (11th Cir. 2002).

Rule 68 offers are governed by normal principles of contract law. *See Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1209 (11th Cir. 1983). "A contract is ambiguous where it is susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract." *F.T.C. v. Leshin*, 618 F.3d 1221, 1231 (11th Cir. 2010) (internal quotation marks omitted).

Miami Auto Max's offer was not susceptible to multiple interpretations. The offer provided that Miami Auto Max would allow a judgment to be taken against it "in the amount of *Three Thousand Five Hundred Dollars ($3,500.00)*, inclusive of liquidated damages, plus a reasonable amount of attorney['s] fees and costs incurred to date by Plaintiff, including attorney['s] fees and costs incurred in establishing the amount of fees and costs, to be determined by the Court." Vasconcelo argues that it is ambiguous whether the $3,500 offer included fees and costs. He is correct only if it is reasonable to read the phrase "inclusive of liquidated damages, plus a reasonable amount of attorney['s] fees and costs" as if the comma after "damages" was not there, and as if the word "plus" was used synonymously with the word "and." But that reading is unreasonable. The word "inclusive" is set off from the word "plus" with a comma, clearly contradistinguishing "liquidated damages," which are included in the $3,500, and "a reasonable amount of attorney['s] fees and costs," which is to be added

16

separately. Miami Auto Max's offer is susceptible to only one reasonable reading: that the offer is for $3,500 *plus* reasonable fees and costs as determined later by the court.

Vasconcelo argues that a $194.40 judgment and a finding of liability is "more favorable" for purposes of Rule 68 than a $3,500 settlement and a denial of liability. Vasconcelo seizes on the fact that Miami Auto Max's offer included language that "neither it nor any resulting judgment shall be construed as an admission by [Miami Auto Max] of any liability in this action, or that [Vasconcelo] has suffered any damage . . . ." He suggests that the jury verdict had substantial non-pecuniary value because it vindicated his mistreatment by Miami Auto Max and that the jury's finding of liability created public benefits that must be considered in the Rule 68 analysis.

Vasconcelo is correct that the non-monetary elements of a judgment should be considered when comparing it to a Rule 68 offer. *See Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 231 (2d Cir. 2006); *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 837–38 (6th Cir. 2005). But the district court did not clearly err in its implicit factual finding that Vasconcelo's non-pecuniary interest in establishing Miami Auto Max's liability was not worth more than the $3,305.60 difference between the jury verdict and the offer. *Jordan*, 111 F.3d at 105; *see also Reiter*, 457 F.3d at 229 (holding that a district court's

17

conclusion that a Rule 68 offer was more favorable than a judgment including substantial equitable relief was "clearly erroneous . . . [because it] draws indefensible conclusions about the worthlessness of the equitable relief . . . obtained"). The magistrate judge's report and recommendation aptly put it this way: "contrary to [Vasconcelo's] aggrandized view of this case, the [Fair Labor Standards Act] is not designed to merely reward attorneys billing time."

Vasconcelo also suggests that jury verdicts establishing liability under the Fair Labor Standards Act create several public benefits that must weigh in the Rule 68 favorability analysis. Public benefits include "society's interest in vindication of rights created by remedial statutes," the fact that a jury verdict exposes the guilty employer to civil penalties for future violations, and the fact that the verdict may create a precedential decision in the jurisdiction for future plaintiffs to rely on. We disagree.

Vasconcelo cites no decision in which any court has taken such a holistic approach. Rule 68 instead directs courts to compare the offer of judgment to "the judgment . . . finally obtain[ed]." Fed. R. Civ. P. 68(d). The factors Vasconcelo identifies are not part of the judgment and are not germane to the analysis required by Rule 68. *See, e.g.*, *Spencer v. Gen. Elec. Co.*, 894 F.2d 651, 663 (4th Cir. 1990) ("A court's task under the Rule is to compare the offer of 'judgment' to the 'judgment finally obtained' by the offeree and determine if the latter is more

favorable than the former. In making this comparison, the court below strayed from this plain mandate, seeing fit to include the non-judgment relief Spencer acquired as part of her 'judgment finally obtained.'"), *abrogated on other grounds by Farrar v. Hobby*, 506 U.S. 103 (1992); *Johnston v. Penrod Drilling Co.*, 803 F.2d 867, 870 (5th Cir. 1986) ("Rule 68's description of the sum to be compared to the offer is clear: 'the judgment finally obtained.'"). So the conclusion that the $194.40 judgment was not more favorable than the $3,500 offer of judgment was not reversible error. The district court correctly applied Rule 68 to tax the parties' post-offer costs against Vasconcelo.

## IV. CONCLUSION

We **DISMISS** the appeal of the final judgment and **AFFIRM** the order awarding attorney's fees and taxing costs.

19