FILED
United States Court of Appeals
Tenth Circuit

March 26, 2024

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

SAMUEL LEE DARTEZ, II,

    Plaintiff - Appellee/
    Cross-Appellant,

v.

RICK PETERS; ALEX R. TAYLOR;
JASON S. BAILEY;
CHRISTOPHER BEAS;
DANIEL W. DILORETO;
CHRISTOPHER P. MAI, COLBY J.
MARKHAM; DAVID RUBLE;
BRIAN S. HEDGECOCK; HERMAN
JONES; PERRY FREY;
CHRISTOPHER BOWLING;
ROBERT KEENER; JASON
DEVORE; ROBERT WARE,

    Defendants - Appellants/
    Cross-Appellees,

and

MARK FRENCH; BRIAN
JOHNSON; ROBERT W. DIERKS;
JOSEPH EHRLICH,

    Defendants.

Nos. 22-3155 & 22-3164

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 5:15-CV-03255-EFM)
_____

Gregory P. Goheen, McAnany, Van Cleave & Phillips, P.A., Kansas City, Kansas, for the Defendants-Appellants.

David G. Seely (Lyndon W. Vix and Ryan K. Meyer, with him on the briefs) of Fleeson, Gooing, Coulson & Kitch, LLC, Wichita, Kansas, for Appellee/Cross-Appellant.

_____

Before **MATHESON**, **BACHARACH**, and **EID**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal involves a fee award to the attorneys representing a prisoner who obtained a favorable judgment. Parties must ordinarily pay their own attorneys' fees in the absence of a contrary agreement or statute. *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 247, 257 (1975). In this case, attorneys' fees are awardable to the prevailing plaintiff under both an offer of judgment and a statute. *See* 42 U.S.C. § 1988(b). But because the plaintiff was a prisoner, federal law would ordinarily limit the amount of attorneys' fees that can be recouped from the defendants and require the plaintiff to contribute to any fee award. 42 U.S.C. § 1997e(d).

To resolve the appeal, we must decide how the offer of judgment affects the applicability of the statutes allowing and limiting a fee award. The district court assumed that an offer of judgment could trump the

statutes, and the defendants don't develop a contrary argument.[1] So the appeal turns on how a court interprets the offer of judgment.

The offer of judgment included payment of $60,000 to the plaintiff "plus reasonable attorneys' fees and costs allowed by law, if any." Appellants App'x vol. 3, at 275. This language is ambiguous on whether the parties waived a potential statutory limit on the amount of a fee award. Because the district court resolved this ambiguity by using extrinsic evidence, we defer to the district court's finding on the parties' intent.

The parties also disagree on whether the language waived the plaintiff's statutory obligation to contribute to his attorneys' fee award. Interpretation of this language didn't involve any extrinsic evidence. So we conduct de novo review when interpreting this part of the offer of judgment. Through de novo review, we conclude that the parties agreed to waive the statutory requirement for the plaintiff to contribute to his attorneys' award of fees.

Finally, we consider the plaintiff's cross-appeal, which addresses a statutory cap on hourly rates for an award of attorneys' fees. The parties agree that the cross-appeal turns on our disposition of the other challenges

---

[1] The defendants point out that the district court didn't cite a precedent "to suggest that an accepted Rule 68 offer of judgment could modify the mandatory provisions of [the statutory limit on attorneys' fees] by mere silence." Appellants' Opening Br. at 18. But the defendants don't otherwise question the parties' ability to avoid the statutory constraints through an offer of judgment.

to the fee award. Applying our disposition of the other challenges, we conclude that the statutory cap on hourly rates does not apply.

### 1. A suit for excessive force leads to an offer of judgment and an acceptance.

Mr. Samuel Lee Dartez, II sued state officers for excessive force, invoking 42 U.S.C. § 1983. To settle, the state officers made an offer of judgment; and Mr. Dartez accepted the offer.

### 2. The district court awards over $570,000 in fees to Mr. Dartez's attorneys.

Acceptance of the offer resulted in a judgment of $60,000 for Mr. Dartez "plus reasonable attorneys' fees." *Id.*; *see* p. 3, above. So the district court considered submissions on the amount of the attorneys' fees to be awarded. Based on these submissions, the district court granted a fee award of $576,242.28. This appeal followed.[2]

### 3. The defendants haven't preserved their challenge to the proof of an actual violation.

The defendants argue that federal law prohibited an award of attorneys' fees because Mr. Dartez had not proven an actual violation. *See* 42 U.S.C. § 1997e(d)(1)(A) (establishing this requirement in suits filed by prisoners). The district court characterized this argument as perfunctory. The defendants don't question this characterization, so the argument was

---

[2]     The appeal is brought by fifteen employees of the Kansas Highway Patrol who were named as defendants. The other defendants aren't involved in the appeal.

4

forfeited in district court. *See Goode v. Carpenter*, 922 F.3d 1136, 1149 (10th Cir. 2019) (stating that a party's "perfunctory presentation" in district court resulted in forfeiture).

We can ordinarily consider forfeited arguments for plain error. *See EEOC v. Beverage Distribs. Co.*, 780 F.3d 1018, 1023 n.4 (10th Cir. 2015). But the defendants don't argue plain error. So we decline to consider this argument. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011) (Gorsuch, J.).

**4.     Ambiguity arises from the combination of the offer of judgment and the applicable statutes.**

This appeal turns on how two statutes apply to the offer of judgment. Absent any agreement, attorneys' fees could be

- *allowed* under 42 U.S.C. § 1988(b) and

- *limited* by 42 U.S.C. § 1997e(d).

Under § 1988(b), Mr. Dartez could obtain a reasonable award of attorneys' fees as the prevailing plaintiff. Under § 1997e, however, three limitations would arise:

1.     The fee award couldn't exceed $90,000 (150% of the amount awarded to Mr. Dartez).

2.     He would need to contribute $15,000 (25% of the judgment) toward the award of attorneys' fees.

3.     The hourly rates for Mr. Dartez's attorneys couldn't exceed 150% of the hourly rates for criminal defense attorneys under the Criminal Justice Act, 18 U.S.C. § 3006A.

42 U.S.C. § 1997e(d)(2)–(3).

The threshold issue is whether the offer of judgment unambiguously waived the limits in § 1997e(d). The offer of judgment included $60,000 "plus reasonable attorneys' fees and costs allowed by law, if any." Appellants' App'x vol. 3, at 275; *see* p. 3, above. Assessing the ambiguity of this clause is a question of law, triggering de novo review. *Bank of Okla. v. Muscogee (Creek) Nat.*, 972 F.2d 1166, 1171 (10th Cir. 1992). In conducting de novo review of potential ambiguity, we consider whether the offer of judgment is susceptible to two or more reasonable interpretations. *See Fire Ass'n of Phila. v. Taylor*, 91 P. 1070, 1072 (Kan. 1907).[3]

---

[3] "The . . . application of Rule 68 is a matter of federal law." *Mock v. T.G.&Y. Stores Co.*, 971 F.2d 522, 527 (10th Cir. 1992). Under federal law, however, we apply the ordinary rules of contract interpretation. *See Guerrero v. Cummings*, 70 F.3d 1111, 1113 (9th Cir. 1995) ("The 'usual rules of contract construction' apply to interpreting the terms of a Rule 68 settlement offer in a § 1983 case."); *Goodheart Clothing Co. v. Laura Goodman Enters., Inc.*, 962 F.2d 268, 272 (2d Cir. 1992) ("Offers of judgment pursuant to Fed. R. Civ. P. 68 are construed according to ordinary contract principles."); *Whitaker v. Assoc. Credit Servs., Inc.*, 946 F.2d 1222, 1226 (6th Cir. 1991) ("Courts may apply general contract principles to determine what was intended in an offer of judgment."). And we generally apply state law when interpreting contracts. *Madsen Prud. Fed. Sav. & Loan Ass'n*, 635 F.2d 797, 802–03 (10th Cir. 1980). The offer of judgment came in a case litigated in Kansas's federal district court, so Kansas law would govern interpretation. *Wilner v. Univ. of Kansas*, 848 F.2d 1020, 1022 (10th Cir. 1988).

**4.1    The offer of judgment could reasonably have waived the cap on the award of attorneys' fees.**

The parties disagree over the effect of the offer of judgment on the statutory ceiling for a fee award. This disagreement stems from a deeper dispute over the statutory source for a fee award. Mr. Dartez identifies this source as 42 U.S.C. § 1988(b), which allows recovery of a reasonable amount of attorneys' fees. The defendants identify the statutory source as 42 U.S.C. § 1997e(d)(2), arguing that this section caps the fee award at $90,000 (150% of the judgment).

The parties' disagreement stems partly from the phrase *allowed by law* in the offer of judgment. What does this phrase modify, and which law *allows* the fee award? Again, the parties supply different answers to both questions. Mr. Dartez says that the phrase *allowed by law* modifies only the term *costs*. The defendants disagree, arguing that the phrase modifies both terms (*reasonable attorneys' fees* and *costs*).

**4.1.1 The offer of judgment is ambiguous as to a cap on the total fee award.**

Both interpretations are plausible, and it's not entirely clear whether the term *allowed by law* modifies

- *reasonable attorneys' fees* and *costs*

      – or –

- just *costs*.

7

The phrase *allowed by law* appears right after the term *costs*, and there's a principle (the last-antecedent rule) that would restrict the modifier to the closest noun (*costs*). *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003).[4] With this restriction of the modifier, the parties would have agreed

- to an award of costs only if such an award had been *allowed by law* and

- to an award of attorneys' fees if they were *reasonable*.

But context may undermine the basis for applying the last-antecedent rule. *Lockhart v. United States*, 577 U.S. 347, 354 (2016).

Does context clarify the meaning of the compound noun *reasonable attorneys' fees and costs*? The defendants don't

- address context or

- question the district court's reliance on the last-antecedent rule.

The parties might have used the modifier *allowed by law* to allow *costs* only if they are expressly authorized by some statute. This interpretation is possible because a federal statute restricts assessment of costs to particular categories of expenses. 28 U.S.C. § 1920. But the phrase *allowed by law*

---

[4]    "Kansas courts apply the last antecedent rule." *State v. Durham*, 172 P.3d 88, 91 (Kan. App. 2007).

might also modify the noun phrase *reasonable attorneys' fees*. So the context doesn't clearly prevent application of the last-antecedent rule.

The concurrence disagrees, arguing that the phrase *allowed by law* unambiguously refers to *attorneys' fees* (as well as *costs*). For this argument, the concurrence reasons that the last-antecedent rule can't apply because (1) *attorneys' fees and costs* typically appears as one cohesive phrase and (2) the Supreme Court doesn't apply the last-antecedent rule when the clause "hangs together as a unified whole, referring to a single thing." Concurrence at 2 (quoting *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1077 (2018)). This reasoning has two shortcomings.

First, no one else has made this argument, and we are limited to the arguments presented by the parties. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (stating that courts "normally decide only questions presented by parties" (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring in denial of reh'g en banc)).

Second, the concurrence's approach begs the question whether the frequent combination of the terms *attorneys' fees and costs* means that they refer to a unified whole. *See Cyan*, 138 S. Ct. at 1077. Even though these terms often appear together, they involve "legally distinct categories of monetary allowances." *Marx v. Gen. Revenue Corp.*, 668 F.3d 1174, 1178 (10th Cir. 2011); *see Petersen v. Gibson*, 372 F.3d 862, 868 (7th Cir.

9

2004) (observing that "[t]he Supreme Court . . . has recognized that the analysis of costs may differ from that of fees"); *Flint v. Haynes*, 651 F.2d 970, 973 (4th Cir. 1981) ("There is a strong historical basis for applying different standards to the taxation of costs and the award of attorney's fees.").

The Supreme Court has treated a phrase as a unified whole when

- a single noun phrase is followed by a restrictive clause[5] or

- both terms take the same direct object.[6]

---

[5] For example, the Supreme Court considered the applicability of the last-antecedent rule to a statute addressing *[a]ny covered class action brought in any State court involving a covered security as set forth in subsection (b) of this section. Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1075 (2018) (quoting 15 U.S.C. § 77p(c)). The issue there was whether the ending modifier (*as set forth in subsection (b)*) applies only to the restrictive modifier *involving a covered security. Id.* at 1076. The Supreme Court answered *no*, reasoning that the restrictive modifier is most naturally read together with the preceding noun phrase (*any covered class action brought in any state court involving a covered security*). *Id.* at 1077. The Court reasoned that the combination of the restrictive modifier and noun phrase referred to a "single thing": "a type of class action." *Id.* For this reasoning, the Court analogized the statutory phrase to a sentence stating: "The woman dressed to the nines carrying an umbrella, as shown in the picture . . ." *Id.* The Court asked rhetorically whether anyone could doubt that the restrictive modifier (*as shown in the picture*) had referred to "the well-attired and rain-ready woman." *Id.* (emphasis deleted).

[6] An example exists when the Supreme Court addressed the meaning of the phrase *capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator. Facebook, Inc. v. Duguid*, 592 U.S. 395, 402 (2021) (quoting 47 U.S.C. § 227(a)(1)). The issue there was whether the ending modifier (*using a random or sequential number generator*) referred to one or both of the preceding verbs (*store* and *produce*). The Court answered that the modifier had referred to both verbs, reasoning that they were connected by the disjunctive *or* and took

Neither the Supreme Court nor our court has ever applied this principle to jettison the last-antecedent rule when two separate noun phrases are

- combined by the conjunctive *and*

  – or –

- lack the same direct object.

In the phrase *reasonable attorneys' fees and costs*, the conjunction (*and*) suggests that the ending modifier could relate to both terms (*reasonable attorneys' fees* and *costs*). So some other appellate courts have parsed the modifiers in clauses involving *attorneys' fees and costs*, concluding that the ending modifier applied only to the closest noun phrase.

For example, the Montana Supreme Court interpreted a contract clause allowing an award of *actual costs and such reasonable attorney fees as the court or arbitrator shall determine just*. *Gullett v. Van Dyke Constr. Co.*, 111 P.3d 220, 223 (Mont. 2005). The question there was whether the ending modifier (*as the court or arbitrator shall determine just*) had modified *costs*, *reasonable attorney fees*, or both. *Id.* at 223–24.

Under the concurrence's approach, the court would apply the ending modifier to both *costs* and *reasonable attorney fees* because these terms

---

the same direct object (*telephone numbers to be called*). *Id.* at 403. The Court observed that "[i]t would be odd to apply the modifier (*using a random or sequential number generator*) to only a portion of this cohesive preceding clause." *Id.*

11

typically appear together. But the state supreme court didn't take that approach; the court instead applied the ending modifier only to the closest noun phrase (*reasonable attorney fees*), relying on the conjunctive *and* as well as the relative clause serving as the ending modifier:

> Here, the main clause of the subject provision indicates two separate awards to which "the prevailing party . . . shall be entitled." These are "actual costs," and "such reasonable attorney fees as the court or arbitrator shall determine just." These awards are separated from one another by the conjunction "and," and the latter award—"reasonable attorney fees"—is situated within, and governed by, the relative clause, "such . . . as the court . . . shall determine just." Due to the placement of "reasonable attorney fees" within this relative clause, and the remoteness of the phrase "actual costs" therefrom, we think it clear that the provision empowered the District Court to award fees on the basis of what is reasonable and just, but not costs, to which the prevailing party was entitled to the actual amount.

*Id.* at 224.

The concurrence argues that this rationale is distinguishable because the Montana court relied on the

- "remoteness" of the terms *fees* and *costs* and

- the pertinence of the relative clause (*such . . . as the court . . . shall determine just*) to the second term.

Concurrence at 2–3. But both features apply to the relevant language in the defendants' offer of judgment.

The Montana Supreme Court didn't regard the term *attorney fees* and *costs* as *remote* because they were far apart. The series contained only two nouns, so they were next to each other. Despite the proximity of the two nouns, the court reasoned that they had been "separated" "by the

12

conjunction 'and.'" *Gullett*, 111 P.3d at 224; *see* p. 12, above (quoting the pertinent passage in *Gullett*). The same is true here: The two nouns here (*attorneys' fees* and *costs*) are also separated by the conjunction *and*.

As the concurrence emphasizes, the Montana Supreme Court also reasoned that the second noun (*attorney fees*) is "situated within, and governed by, the relative clause, 'such . . . as the court . . . shall determine just.'" *Gullett*, 111 P. 3d at 224; *see* Concurrence at 2–3. Again, this rationale applies equally here. In the offer of judgment, the second noun (*costs*) is also "situated within, and governed by, the relative clause" *allowed by law*. *Gullett*, 111 P.3d at 224.

The Oregon Court of Appeals also used the last-antecedent rule when interpreting the phrase *an award of reasonable attorney fees and costs and expenses reasonably incurred*. *In re Olson & Olson*, 480 P.3d 965 (Ore. App. 2021). The issue there was whether the ending modifier (*reasonably incurred*) had addressed just the last noun phrase (*costs and expenses*) or both noun phrases (*reasonable attorney fees* and *costs and expenses*). Under the concurrence's approach, the ending modifier would address each noun phrase. But the court instead applied the ending modifier only to the last noun phrase (*costs and expenses*), not to the first noun phrase (*reasonable attorney fees*). *Id.* at 966–67.

The concurrence points out that the Oregon court reasoned that an arguable redundancy would arise if the ending modifier were to apply to

13

the first noun (*attorney fees*). Concurrence at 3; *Olson*, 480 P.3d at 967.

The *attorney fees* would have two modifiers: At the start would be the

adjective *reasonable*; at the end would be the modifier *reasonably

incurred*. 480 P.3d at 967. An "arguable redundancy" would arise "by

requiring that 'reasonable attorney fees' further be 'reasonably incurred.'"

*Olson*, 480 P.3d at 967. So the Oregon court adopted the interpretation that

would avoid the "arguable redundancy." *Id.*; *see* Concurrence at 3.[7]

---

[7]    The Texas Supreme Court and Kentucky Court of Appeals took a similar approach when addressing the applicability of the last-antecedent rule to combinations of the terms *attorneys' fees* and *costs*.

For example, the Texas Supreme Court interpreted the phrase *court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require. Sullivan v. Abraham*, 488 S.W.3d 294, 297 (Tex. 2016). The issue there was whether the ending modifier had addressed just the last noun phrase (*other expenses*) or each of the noun phrases (*court costs*, *reasonable attorney's fees*, and *other expenses*). *Id.* Under the concurrence's approach, the court would apply the modifier to all three noun phrases because they typically appear together. But the court instead held that the modifier had addressed only the last noun phrase (*other expenses*). *Id.*

The Kentucky Court of Appeals took a similar approach in *Tri v. Tri*, 2010 WL 3515768 (Ky. App. 2010) (unpublished). There the court interpreted a contract, which stated that the parties would be "responsible for their own attorneys' fees and the costs of this action already incurred by them." *Id.* at *3. Under the concurrence's approach, the ending modifier (*already incurred by them*) would unambiguously apply to both *reasonable attorneys' fees* and *costs* because these terms typically appear together. But the court concluded that there were two reasonable interpretations of the contract. For example, the ending modifier (*already incurred by them*) could apply to both *reasonable attorneys' fees* and *costs*. But the ending modifier could also refer only to the immediately preceding term—*costs*. Because two plausible interpretations existed, the court regarded the contract as ambiguous. *Id.*

14

But under the concurrence's view, a similar redundancy would exist here. As the concurrence argues, attorneys' fees would ordinarily be recoverable only as a form of *costs*. Concurrence at 4 (discussing 42 U.S.C. § 1988(b)). And the phrase *allowed by law* unquestionably modifies *costs*. So under the concurrence's approach, the term *costs allowed by law* would include attorneys' fees available under § 1988(b). And § 1988(b) allows attorneys' fees only if they're "reasonable." *See* 42 U.S.C. § 1988(b) (permitting "a reasonable attorney's fee as part of the costs"). So without the last-antecedent rule, the pertinent clause would state that Mr. Dartez could recover

> *reasonable attorneys' fees and costs (including reasonable attorneys' fees)*

That reading of the offer of judgment would create the same arguable redundancy (*reasonable attorneys' fees*) that the Oregon court rejected.

Granted, the cases in Montana and Oregon address different combinations and sequences of contract terms involving *costs* and *attorney fees*. The uniqueness of the combinations and sequences prevents hard-and-fast rules on how to interpret ending modifiers involving *costs* and *attorneys' fees*.

Here, for example, the parties use a modifier (*reasonable*) before the series began. The term *reasonable* obviously modifies the nearby term (*attorneys' fees*). The only question is whether the term *attorneys' fees* is

15

also modified by the more distant ending modifier (*allowed by law*). The concurrence answers *yes*, but that would mean the term *attorneys' fees* is modified by descriptors on both sides. At the front is the adjective *reasonable*; at the end is the relative clause *as allowed by law*. Why would the parties separate the modifiers for the same term (*attorneys' fees*)?

We have no way of knowing why the parties chose this combination or sequence of the terms *costs* and *attorneys' fees*. The combination and sequence undoubtedly vary from those in the opinions by the courts in Montana and Oregon. Because the potential combinations and sequences are so varied, we can't assume that the only conceivable interpretation is one that none of the parties or the district court embraced. According to the interpretations of the courts in Montana and Oregon, the last-antecedent rule would tie the ending modifier to the second term in the series (*costs*)—not the more distant term *attorneys' fees*. The applicability of the last-antecedent rule is thus ambiguous even though the terms *costs* and *attorneys' fees* often appear together.

If the last-antecedent rule does apply, the parties might have intended to agree to any amount of attorneys' fees that the district court were to deem "reasonable." *See Miller v. City of Portland*, 868 F.3d 846, 849–51 (9th Cir. 2017) (concluding that an offer of judgment, which authorized a plaintiff to recover "reasonable attorney's fees to be determined by the Court," did not include "considerations that govern the

16

decision to award fees under §§ 1983 and 1988 . . . as those considerations were not incorporated into the Offer"); *Torres v. Walker*, 356 F.3d 238, 245–46 (2d Cir. 2004) (rejecting an argument that a stipulation of dismissal, stating that the defendants would pay the plaintiff's counsel his "reasonable attorney's fees and costs to be determined by the Court upon the submission of the parties," meant that the fees would be limited by 42 U.S.C. § 1997e(d)). The parties thus might have agreed that the fee award could extend beyond the limits in § 1997e.

But let's assume, for the sake of argument, that the concurrence is right and the last-antecedent rule doesn't apply. In that event, we would apply the ending modifier (*allowed by law*) to both noun phrases (*reasonable attorneys' fees* and *costs*). The question then would be which law is referenced in the relative clause *allowed by law*: § 1988(b) or § 1997e?

Section 1988(b) *allows* an award of attorneys' fees, and section 1997e *limits* those fees. A factfinder could thus reasonably regard the reference to *law* as § 1988(b) because

- it *allows* the award and

- § 1997e instead *limits* the award.

Of course, this is not the only way to interpret the offer of judgment. For example, the district court could interpret the offer of judgment to authorize a fee award only to the extent that the overall amount falls within

17

§ 1997e.[8] Under this interpretation, the district court would need to cap the

attorneys' fees at $90,000 (150% of the amount awarded to Mr. Dartez

himself).[9]

    We thus have two ways to interpret the term *allowed by law*. The

term could mean that attorneys' fees were reasonable if they satisfied

- § 1988

          – or –

- both § 1988 and § 1997e.[10]

Because both interpretations are plausible, the offer of judgment is

ambiguous as to a statutory cap on the fee award.

---

[8]     The parties stipulated in district court that the substantive issues
would be governed by various provisions, including 42 U.S.C. § 1997e.
But the stipulation preceded the offer of judgment, and the issue is whether
the later offer of judgment jettisoned the limitations in § 1997e.

[9]     Mr. Dartez argues that § 1997e doesn't apply because his claim
involved events preceding his incarceration. We rejected this argument in
*Robbins v. Chronister*, 435 F.3d 1238, 1244 (10th Cir. 2006). And we're
bound by *Robbins*. *Haynes v. Williams*, 88 F.3d 898, 900 n.4 (10th Cir.
1996).

[10]     The concurrence assumes that the term *allowed by law* refers to
§ 1988, not § 1997e. *See* p. 15, above. But the concurrence doesn't say why
the defendants' reliance on § 1997e isn't at least plausible.

18

### 4.1.2 A canon and extrinsic evidence helped the district court to resolve the ambiguity.

To resolve the ambiguity, the district court used two interpretive tools:

1. the defendants' role in drafting the offer of judgment and

2. the existence of extrinsic evidence.

First, the court reasonably interpreted the language against the defendants because they could have removed the ambiguity when they drafted the offer of judgment. *See Weber v. Tillman*, 913 P.2d 84, 97 (Kan. 1996) (stating that ambiguities should be resolved against the party that drafted the written instrument); *see also Kubiak v. Cnty. of Ravalli*, 32 F.4th 1182, 1187 (9th Cir. 2022) (stating that ambiguities in an offer of judgment are construed against the drafter); *Vasconcelo v. Miami Auto Max, Inc.*, 981 F.3d 934, 943 (11th Cir. 2020) (stating that "an ambiguous offer of judgment . . . is construed against its drafter"); *Sanchez v. Prudential Pizza, Inc.*, 709 F.3d 689, 694 (7th Cir. 2013) (construing an ambiguous offer of judgment against the offeror).

Second, the district court reasonably relied on extrinsic evidence. For example, the district court pointed to evidence that defense counsel had expressed their clients' willingness to pay attorneys' fees of $100,000 or more.

19

The defendants argue that the district court shouldn't have considered this evidence because it involved settlement negotiations for a Tenth Circuit mediation. But this argument lacks evidentiary support. Mr. Dartez presented affidavits stating that defense counsel's statements had preceded an appeal or involvement by the Tenth Circuit Mediation Office, and the defendants present no contrary evidence.[11]

Because the defendants drafted the ambiguous language and extrinsic evidence suggested that the defendants were willing to pay attorneys' fees of $100,000 or more, the district court interpreted the offer of judgment to authorize a fee award exceeding the limit in § 1997e (150% of the amount awarded to Mr. Dartez).

### 4.1.3 Resolution of this ambiguity lay with the district court as the factfinder.

We thus consider the district court's role in resolving the ambiguous language with the aid of extrinsic evidence.

Kansas courts distinguish between ambiguous contracts

- that can be interpreted as "clear question[s] of law" and

- that present questions of fact.

---

[11]    The defendants elsewhere say that settlement negotiations "should play no role," but don't say why. Appellants' Opening Br. at 26. In their reply brief, the defendants cite a local rule of the district court. *See* D. Kan. Loc. R. 16.3(j)(2). But the defendants don't argue that their counsel's statement was inadmissible under this rule.

*Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 804 P.2d 1012, 1016–17 (Kan. App. 1991).

The ambiguity here involved a factual question, and the district court answered by relying in part on extrinsic evidence (the statement by defense counsel that his clients were willing to pay attorneys' fees of $100,000 or more). The use of extrinsic evidence required a factual determination that lay within the province of the factfinder. *See Slawson Expl. Co. v. Vintage Petroleum, Inc.*, 78 F.3d 1479, 1482 (10th Cir. 1996); *see also Mobile Acres, Inc. v. Kurata*, 508 P.2d 889, 895 (Kan. 1973) ("Where there is ambiguity in a written contract and extrinsic evidence is required to ascertain the intention of the parties, summary judgment should not be entered in the face of contradictory or conflicting evidence."); *Rettiger v. Dannely*,136 P. 942, 943 (Kan. 1913) (concluding that interpretation of an ambiguous contract involves a question of fact rather than law).[12]

---

[12]    The concurrence rejects deference to the district court's interpretation. Concurrence at 5–6. In rejecting any deference, the concurrence relies in part on precedents in our court and the Kansas Supreme Court, which treat contract construction as a question of law. *Id.* at 5 & n.1 (quoting *Penncro Assocs., Inc. v. Sprint Spectrum*, *L.P.*, 499 F.3d 1151, 1155 (10th Cir. 2007) (Gorsuch, J.)), and *Born v. Born*, 374 P.3d 624, 632 (Kan. 2016)). But these precedents don't involve consideration of extrinsic evidence. *See Penncro Assocs.*, 499 F.3d at 1158–60; *Born,* 374 P.3d at 633–39. Under Kansas law, contractual interpretation "becomes a question of fact" when the language is ambiguous and the meaning "depends on extrinsic circumstances." *Slawson Expl. Co. v. Vintage Petroleum, Inc.*, 78 F.3d 1479, 1482 (10th Cir. 1996) (applying Kansas law and quoting *City of Farmington v. Amoco Gas Co.*, 777 F.2d 554, 560 (10th Cir. 1985)).

**4.2    The district court didn't err in calculating the fee award.**

Under federal law, the amount of the fee award had to be proportionate to the relief ordered. 42 U.S.C. § 1997e(d)(1)(B)(i). The defendants argue in part that a fee award of over $570,000 was disproportionate to Mr. Dartez's judgment for $60,000.

The district court rejected this argument, reasoning that

- Mr. Dartez needed to fight for every "inch" and

- the time spent by Mr. Dartez's attorneys was "very likely" necessary for Mr. Dartez to obtain any relief.

Appellants' App'x vol. 5, at 171. On appeal, the defendants devote only one sentence to this reasoning: "The District Court is critical of the number of dispositive motions filed by Defendants, but fails to note that Plaintiff kept expanding claims and Defendants and refusing to give up claims that were clearly not supported by the law or facts such as pre-arrest 5th Amendment claims which the District Court never dismissed in spite of their lack of viability." Appellants' Opening Br. at 29.

This generalized assertion, lacking any authority or citation to the record, doesn't provide a meaningful basis for review. Missing are

- any examples of Mr. Dartez's expansion of claims or parties,

- any support for the invalidity of the "pre-arrest 5th Amendment Claims,"

- any information about the amounts awarded as a result of the expansion of claims or parties, or

22

- any authority or explanation challenging the district court's reasoning.

These shortcomings doom the defendants' argument. *See In re Syngenta AG MIR 161 Corn Litig.*, 61 F.4th 1126, 1212–13 (10th Cir. 2023) (concluding that the appellants' failure to address the district court's reasoning for a fee award was "fatal").[13]

In the body of their argument on proportionality, the defendants also argue that the district court should have cut the fees to account for the claims against other parties. The district court explained that (1) Mr. Dartez had proposed a 10% reduction and (2) the defendants had failed to present an alternative figure. Without an alternative figure, the district court addressed the disputed entries.

On appeal, the defendants say that the district court awarded fees for duplicative time, clerical tasks, and attendance at a criminal proceeding. But again, the defendants haven't provided any examples, amounts, record cites, or authorities. We thus lack a meaningful argument to review. *See Martinez v. Roscoe*, 100 F.3d 121, 124 (10th Cir. 1996) (rejecting the

---

[13]    Mr. Dartez suggests that the parties agreed to waive all of the restrictions in § 1997e(d). But even if the parties hadn't waived the proportionality requirement, the district court wouldn't have erred in finding satisfaction of that requirement.

defendants' generalized challenge to a fee award given the lack of any specificity in the challenge).[14]

### 4.3    The offer of judgment waived Mr. Dartez's duty to contribute to the fee award.

With no contrary agreement, federal law would require Mr. Dartez to contribute 25% of the fee award. 42 U.S.C. § 1997e(d)(2). But Mr. Dartez argues that the offer of judgment waived this requirement. We agree.

### 4.3.1 The offer of judgment is ambiguous on Mr. Dartez's duty to contribute to the fee award.

The offer of judgment called for Mr. Dartez to recoup $60,000 *plus* a reasonable amount of attorneys' fees. Appellants' App'x vol. 3, at 275; *see* p. 3, above. The term *plus* suggests that the fee award is added to the amount awarded to Mr. Dartez. *See Oxford Eng. Ref. Dict.* 1115 (Judy Pearsall & Bill Trumble eds., 2d ed. rev. 2006) (providing a primary definition of *plus* as *with the addition of*). If Mr. Dartez had to contribute 25% of his $60,000 recovery to pay the fee award, the district court could reasonably conclude that Mr. Dartez had received $60,000 *minus* 25%, a smaller amount than the $60,000 promised to him in the offer of judgment.

---

[14]    The offer of judgment provided for "reasonable attorney fees." Appellant's App'x vol. 3, at 275; *see* p. 3, above. Determining the reasonableness of the fees would be a question for the district court. *See, e.g.*, *White v. Gen. Motors Corp.*, 977 F.2d 499, 502 (10th Cir. 1992) (deferring to the district court's conclusions on the reasonableness of attorneys' fees).

So the court could reasonably interpret the offer of judgment as a proposal to waive the statutory requirement for Mr. Dartez to contribute to the fee award.

But this interpretation is open to debate. The defendants point out that fee awards are typically awarded to the plaintiffs rather than to their attorneys. *E.g.*, *Astrue v. Ratliff*, 560 U.S. 586, 588–89 (2010); *Comm'n of Internal Rev. v. Banks*, 543 U.S. 426, 436–37 (2005). Based on this practice, the defendants suggest that the statutory requirement for Mr. Dartez to contribute to his attorneys' fees wouldn't reduce his judgment. The judgment would instead reflect the sum of three items: (1) the base amount of $60,000; (2) the amount awarded in attorneys' fees; and (3) the amount awarded in costs. Once these items were awarded to Mr. Dartez, the defendants continue, federal law would require Mr. Dartez to pay his attorneys with part of the judgment. But Mr. Dartez would still have received "$60,000 plus reasonable attorneys' fees," as the offer of judgment provides.

This interpretation of *plus* is reasonable, but not dispositive. The district court could reasonably interpret *plus* to mean that Mr. Dartez himself would get at least $60,000. The clause was thus ambiguous.

**4.3.2 The district court did not err in resolving the ambiguity.**

In resolving this ambiguity, the district court relied on the language of the offer of judgment rather than extrinsic evidence. Given the district

25

court's reliance on the language itself, we assume for the sake of argument that our review is de novo.[15]

To interpret the ambiguous language, we resolve the ambiguity against the defendants because they had drafted the offer of judgment. *See* Part 4.1.2, above. The defendants could have clarified in the offer of judgment that Mr. Dartez might need to use part of his $60,000 to pay his attorneys. But the defendants said that Mr. Dartez would receive not only the $60,000, but also an award of attorneys' fees. Given the defendants' language in the offer of judgment, we conclude that the parties waived Mr. Dartez's obligation to contribute to his attorneys' fee award.

5.    **The district court's interpretation of the offer of judgment would remove the statutory cap on counsel's hourly rates.**

When the district court calculates a fee award, federal law would ordinarily cap the attorneys' hourly rates. 42 U.S.C. § 1997e(d)(3). In district court, Mr. Dartez argued that the offer of judgment waived the statutory cap on hourly rates. The district court disagreed and applied the

---

[15]    We lack precedent under Kansas law on the standard of review when interpretation of one ambiguous term requires consideration of extrinsic evidence and interpretation of another ambiguous term does not. *See, e.g.*, *Slawson v. Expl. Co. v. Vintage Petroleum, Inc.*, 78 F.3d 1479, 1482 (10th Cir. 1996) (discussing the interpretation of ambiguous contracts under Kansas law but not addressing this question). We assume for the sake of argument that de novo review applies to interpretation of ambiguous terms when no extrinsic evidence is considered.

statutory cap, and Mr. Dartez cross-appeals to challenge this ruling. We agree with Mr. Dartez.

The parties agree that they either waived all of the statutory limitations or none of them, and we've already upheld the district court's findings that the parties had agreed to avoid the statutory limits on a fee award. Given our affirmance of those findings, the defendants have conceded that we would also need to reverse the district court's application of the cap on hourly rates. Given this concession, we reverse the district court's application of the statutory cap on hourly rates.

## 6.    Disposition

On the defendants' appeal, we affirm the rulings that

- the parties waived statutory provisions capping the fee award and requiring Mr. Dartez to contribute to that award and

- the fee award was proportionate to the relief ordered.

27

On Mr. Dartez's cross-appeal, we (1) reverse imposition of the cap on hourly rates and (2) remand for the district court to recalculate the fee award without the statutory cap on hourly rates.[16]

---

[16]    Mr. Dartez also argues that § 1997e's limitations on attorneys' fees do not apply for two reasons:

1.    He obtained non-monetary relief.

2.    He received an agreed amount to settle the case, but the court did not award him a monetary judgment under § 1997e(d)(2).

We need not consider these potential grounds for affirmance.

In his cross-appeal, Mr. Dartez also suggests that we might need to suspend our local rule on the confidentiality of settlement negotiations. *See* 10th Cir. R. 33.1(D). Suspension of the local rule is unnecessary because the district court had enough information to determine the parties' intent without considering the settlement negotiations.

*Dartez v. Peters*, Nos. 22-3155, 22-3164

**EID**, Circuit Judge, concurring in the judgment.

I agree with the majority that we should affirm the district court's construction of the Offer of Judgment. However, I disagree with both the district court and the majority in their conclusions that the Offer of Judgment is ambiguous. In my view, the only reasonable construction of the Offer of Judgment would require us to reverse the district court—but because the Officers waived any such argument on appeal, we must instead affirm.

The Officers extended an Offer of Judgment "in the total amount of Sixty Thousand Dollars ($60,000.00) plus reasonable attorneys' fees and costs allowed by law, if any, which ha[d] been incurred to date." App'x Vol. III at 275. Dartez accepted, *id.* at 277, and the district court entered judgment accordingly, *id.* at 278.

In calculating what attorneys' fees Dartez may be awarded, the district court construed the Offer of Judgment to contract around the background rules of law that cap attorneys' fees in cases such as this. *See* App'x Vol. V at 158–59. The district court determined that the phrase "reasonable attorneys' fees and costs allowed by law" is ambiguous because "under the grammatical last antecedent rule," the phrase "allowed by law" modifies only the word "costs." *Id.* at 159. Therefore, the district court reasoned, it is "far from clear that the 'allowed by law' language references the PLRA" or its limitations on fees. *Id.* The district court thus construed the purported ambiguity against the Officers as the drafters of the Offer of Judgment and ruled that "no fee cap under the PLRA applies in this case." *Id.* at 159–60.

The district court improperly applied the last-antecedent rule. The rule of last antecedent "is not an absolute and can assuredly be overcome by other indicia of meaning." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). For instance, when a term modifies a clause that "hangs together as a unified whole, referring to a single thing," the last-antecedent rule does not produce the most likely meaning of the phrase. *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1077 (2018). In short: the last-antecedent rule does not dissect phrases that are otherwise intertwined.

The language of the Offer of Judgment does not permit the district court's construction. The phrase "fees and costs" is best understood as a unified phrase, not as two items in a short list. It is so ubiquitous a phrase that it scarcely warrants citation. It appears in innumerable cases across every jurisdiction in the country, including the Tenth Circuit. The overwhelming majority of such cases employ the term "fees and costs" as a unified phrase to refer to a single award of money. *See, e.g.*, *In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 997 F.3d 1077, 1081 (10th Cir. 2021).

The cases cited by the majority reach different conclusions because they interpret different texts. *See* Maj. Op. at 11–14. As the majority agrees, those different texts "address different combinations and sequences of contract terms involving *costs* and *attorney fees*." *Id.* at 15. For instance, the Montana Supreme Court interpreted a contract allowing "actual costs and such reasonable attorney fees as the court or arbitrator shall determine just" to refer to two separate awards because the terms "fees" and "costs" were "remote[]" from each other, and because the term "fees" was "situated within, and

governed by" the distinct, more complex clause "such . . . as the court . . . shall determine just." *See Gullett v. Van Dyke Constr. Co.*, 327 Mont. 30, 36 (2005). Those features are not present here. *Contra* Maj. Op. at 11–13.

The majority also looks to an Oregon Court of Appeals decision interpreting the phrase "an award of reasonable attorney fees and costs and expenses reasonably incurred." *In re Olson and Olson*, 308 Or. App. 633, 635(2021) (cited by Maj. Op. at 13–14). In that case, the Oregon Court of Appeals recognized that the "incurred" language would normally apply to the entire preceding phrase. *Id.* at 635–36 (citing *Anderson v. Wheeler*, 214 Or. App. 318, 320 (2007)). However, the court reasoned that it was "unlikely" that the legislature "requir[ed] that 'reasonable attorney fees' further be 'reasonably incurred.'" *Id.* at 636. The court therefore read the statute to avoid that "redundancy." *Id.* Again, this reasoning simply does not apply to this case.

In truly similar cases, where a contract or statute uses only the unified phrase "fees and costs," courts do not typically see fit to drive a wedge in the middle of that phrase. For example, when construing statutes allowing "reasonable attorney's fees and costs as determined by the court," courts have consistently interpreted such statutes to provide for "attorney's fees to be 'determined by the court.'" *Miller v. Mun. Ct. of City of L.A.*, 22 Cal. 2d 818, 852 (1943) (construing the Emergency Price Control Act of 1942, 56 Stat. 23 § 205(e)); *see also, e.g.*, *Stowe v. Bologna*, 415 Mass. 20, 23 (1993) (similar); *Pearce v. Vandagriff*, 203 Okla. 450, 453 (1950) (similar). The district court should have done the same here with the similar language in the Offer of Judgment. It therefore erred

3

in applying the last-antecedent rule to split the inextricable "fees and costs" into two separate items. *See Cyan*, 138 S. Ct. at 1077.

Nor do background principles of law permit such a construction. Under Kansas law, like the law of most states, it is appropriate to construe contracts in light of the external sources of law they reference. *See, e.g.*, *CitiMortgage, Inc. v. Dinwiddie*, 443 P.3d 365 (Kan. Ct. App. 2019) (construing a contract incorporating external sources of law). Here, the phrase "reasonable attorneys' fees and costs" is best understood to refer to the existing well-developed body of law about what attorneys' fees and costs may be awarded in a civil rights case. 42 U.S.C. § 1988; *see Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998). Therefore, any construction of the Offer of Judgment must be consistent with the rules of law it incorporates.

The language of § 1988 forecloses the district court's conclusion. Under § 1988(b), a district court "in its discretion" may allow a prevailing civil rights plaintiff "a reasonable attorney's fee as part of the costs" granted to him. 42 U.S.C. § 1988(b). In other words, attorneys' fees are allowed by § 1988 only as "part of the costs" allowed by § 1988. *Id.* By statute, such fees are a subset of costs. The "reasonable attorneys' fees" provided by the Offer of Judgment are therefore among the "costs" provided by such offer, and they are likewise limited by the "allowed by law" clause. *See Marek v. Chesny*, 473 U.S. 1, 9 (1985) ("[A]bsent congressional expressions to the contrary, where the underlying statute defines 'costs' to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68."). In concluding otherwise, the district court erred.

Nor is the majority right to defer to the district court's judgment in this case. The majority claims that if the offer of judgment is ambiguous, the meaning of the offer of judgment is a question of fact that requires deference to the district court. Maj. Op. at 3, 21–22. Kansas contract law says otherwise. Because private settlements are contracts, state contract law applies—here, the law of Kansas. *Flying J Inc. v. Comdata Network, Inc.*, 405 F.3d 821, 831 (10th Cir. 2005). When a contract is ambiguous, Kansas law asks first whether it contains a legal ambiguity or a factual ambiguity. *See Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 15 Kan. App. 2d 153, 161, *rev. denied*, 248 Kan. 997 (1991). A factual ambiguity involves a "question of fact," such as whether the parties acted in a way that triggered certain conditions in a contract. *Id.* However, if a term is "susceptible of more than one meaning," the resulting ambiguity is a "clear question of law." *Id.* When a contract presents such a legal ambiguity, the "court should construe the contract." *Id.* at 157. Here, the district court did just that—and under Kansas law and Tenth Circuit precedent, "[t]he proper construction of a contract is a question of law" that this Court must "review *de novo*." *Penncro Assocs., Inc. v. Sprint Spectrum, L.P.*, 499 F.3d 1151, 1155 (10th Cir. 2007) (Gorsuch, J.) (interpreting a contract under Kansas law).[1] Therefore, I disagree with the majority's undue deference to the district court's construction.

---

[1]  Even if other Tenth Circuit decisions have erroneously held that contract interpretation is a question of fact, *see* Maj. Op. at 21–22 & n.12, the Kansas Supreme Court has superseded those cases. *See Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003). According to the Kansas Supreme Court, contract construction is always a question of law on which a lower court is due no deference. *See Born v. Born*, 304 Kan. 542, 554 (2016) ("The interpretation of . . . written contracts is a question of law over

5

In the end, however, none of that matters to the result in this case for the reason the majority identifies—"no one else has made this argument." Maj. Op. at 9. The Officers failed to make any argument on appeal about the construction of the phrase "reasonable attorneys' fees and costs allowed by law." The Officers' only argument is that the Offer of Judgment "means exactly what it says – [Dartez] is able to recover fees allowed by law, if any, and the only law that allows him to potentially recover any attorneys' fees is the PLRA." Aplt. Br. at 21. But the Officers do not further justify why we should accept their construction of the Offer of Judgment. They do not attempt to explain why the district court's construction was erroneous. Nor do the Officers support their conclusions with any legal authority, much less precedent upon which we may rely. Therefore, the Officers' "mere conclusory allegations with no citations to the record or any legal authority for support" are "not adequately briefed," and under the law of our Circuit we must deem them "waived." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005). The Officers' failure to make a construction argument "disentitle[s] [them] to review" on appeal. *Id.* I therefore disagree with the majority's choice to reach this issue.

I agree with the majority that the Officers waived other of their arguments on appeal. *See* Maj. Op. at Part 3 (actual violation of constitutional rights); Part 4.2 (proportionality of fee award). I also agree with the majority's conclusion that Dartez is not obligated to contribute a portion of his judgment to his attorneys' fees. *See id.* at

which this court exercises unlimited review, unaffected by the lower courts' interpretations or rulings.").

6

Part 4.3.  However, for the reasons I have stated, I disagree with the majority's

construction of the Offer of Judgment and the majority's choice to reach that question.

Therefore, I respectfully concur in the judgment.